IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 21, 2016 Session

IN RE MAKENZIE P., ET AL.

Appeal from the Chancery Court for Shelby County
No. CH-14-1307-3  James R. Newsom, Chancellor
_____

No. W2016-00400-COA-R3-PT – Filed September 30, 2016
_____

This appeal arises from the termination of a mother's parental rights to her two children. The Department of Children's Services ("DCS") removed the children from the mother's home due to drug exposure. After finding the children dependent and neglected, a juvenile court awarded custody of the children to mother's parents. The mother's parents then contracted with a nonprofit organization to place the children with a host family while the mother sought treatment for her drug use. Time passed, and the children ultimately spent time with several host families, including, finally, potential adoptive parents. When the health of mother's parents precluded them from retaining custody, mother, mother's parents, and the potential adoptive parents requested that the juvenile court award custody to the potential adoptive parents. The juvenile court granted the request, and several months later the potential adoptive parents filed a petition in chancery court to terminate mother's parental rights and to adopt. Following a trial, the chancery court found clear and convincing evidence of one ground for termination of parental rights and that termination was in the children's best interest. On appeal, Mother asserts a violation of due process because she was unrepresented in the dependency and neglect proceedings after her parents were awarded custody of the children. We affirm the termination of parental rights.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed.

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined.

Andrew L. Wener, Memphis, Tennessee, for the appellant, Jennifer A.

Laura D. Rogers, Memphis, Tennessee, for the appellees, Carla W. and Mitchell W.

Stacey Graham, Bartlett, Tennessee for the appellee, Guardian ad Litem.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

In March of 2012, DCS removed Makayla, then age 2, and Makenzie, then age 1, from the home of their mother, Jennifer A. ("Mother"), and father. Less than twelve hours later, the children's father died from a heroin overdose. In an order entered on April 5, 2012, a juvenile court found the children dependent and neglected based on the finding that Mother "tested positive for methamphetamines, benzodiazepines, propoxyphene, amphetamine, cocaine, and THC.[1]"

In addition to finding the children dependent and neglected, the juvenile court made two more rulings pertinent to this appeal. First, the juvenile court awarded custody of the children to the maternal grandparents. According to the maternal grandmother ("Grandmother"), Mother did not want DCS to maintain custody of the children because Mother was concerned about meeting the requirements imposed by DCS for reunification. Grandmother testified that she learned about Bethany Christian Services of West Tennessee ("Bethany") and a program called "Safe Families for Children." Under the program, the children could be placed with a host family for up to a year while Mother attempted to address her drug addiction. After Grandmother and Mother had meetings with representatives of Bethany, Mother consented to or, in her words, "went along with" custody being awarded to her parents so that the children could be placed in the Safe Families for Children program.

Second, the juvenile court addressed the continuing obligations of Mother's attorney. A court-appointed attorney represented Mother through the adjudicatory and dispositional phases of the dependency and neglect case. The juvenile court's order finding the children dependent and neglected and awarding custody to the maternal grandparents provided that Mother's appointed attorney "shall be relieved from the case upon the expiration of the statutory time for a rehearing and/or appeal."

As contemplated by Mother and Grandmother, the children never went to live with their maternal grandparents. Shortly after the dependency and neglect hearing, Grandmother signed on behalf of each child a Safe Families for Children Consent for Care Form with Bethany. Under the agreement with Bethany, Grandmother acknowledged a time limit on services under the program and responsibilities for the parent. Specifically, the agreement provided as follows:

---

[1] THC, or tetrahydrocannabinol, "is a marijuana metabolite that is stored in fat cells and can be detected in the body up to thirty days after smoking marijuana." *Interstate Mech. Contractors, Inc. v. McIntosh*, 229 S.W.3d 674, 677 (Tenn. 2007).

ARRANGEMENTS: I understand that 365 days of temporary care will be provided for my child at no charge to me. During this time, it is my responsibility to provide BETHANY and [Safe Families for Children] with items necessary to provide for my child's physical needs, primarily clothing. During the temporary days of care, I will be working on the challenges that led to my needing temporary care for my child. If, after _____ days, I have not reached a point of stability where I can discharge my child from the Safe Family home, I understand that Bethany Christian Services may not agree to extend the days in care but will discuss the possibility of an extension with me depending on my circumstances.

Mother did not sign either form, but Mother, along with Grandmother, took the children from their foster care placement to Bethany. Mother stated later that she participated in every meeting at Bethany involving her children.

Mother went to a drug and alcohol abuse recovery program offered by the Memphis Union Mission called Moriah House. Mother participated in the program for fourteen months, but then she was "kicked out" in July of 2013 for drinking alcohol. According to Mother, she began using drugs again within eight months of exiting the recovery program.

In late 2013, Bethany began pressing Grandmother and Mother about the length of time that the children had been in the Safe Families for Children program. Also complicating matters, the children's host family could no longer keep them because the family was experiencing their own crisis. Bethany provided Mother and Grandmother with a list of three families potentially able to take the children, and after meeting at Bethany with Carla W. and Mitchell W. on Christmas Eve, Mother selected Mr. and Mrs. W. to take the children. According to both Grandmother and Mrs. W., at this meeting, the parties discussed the potential of Mr. and Mrs. W. adopting the children if Mother could not get her life together.

On April 30, 2014, Mother, Grandmother, and Mr. and Mrs. W. appeared before the juvenile court, and the court granted Mr. and Mrs. W. custody of the children. Only Mr. and Mrs. W. were represented by an attorney. According to Grandmother, health issues prevented both her and her husband from retaining custody. By the time of the hearing before the juvenile court, the children had lived with Mr. and Mrs. W. for nearly four months.

On August 29, 2014, Mr. and Mrs. W. filed a petition for termination of parental rights and adoption in the Chancery Court for Shelby County, Tennessee. As grounds for termination, Mr. and Mrs. W. alleged that Mother had abandoned the children both by her willful failure to visit and provide support and persistent conditions that prevented the children's safe return to Mother. *See* Tenn. Code Ann. § 36-1-113(g)(1), (3) (2014). Mr. and Mrs. W. also alleged that Mother was mentally incompetent to provide further care and

3

supervision of the children. *See id.* § 36-1-113(g)(8). In response, Mother filed a motion for appointment of counsel, which the court granted.

The chancery court conducted a hearing on the petition on October 28, 2015. At the hearing, the court heard the testimony of Grandmother, Mrs. W., Mother, and an attorney who practiced child welfare law. At the conclusion of Mr. and Mrs. W's proof and upon Mother's motion, the court dismissed the mental incompetence ground.

In its subsequent well-reasoned and detailed findings of fact and conclusions of law, the court also dismissed the ground of abandonment. However, the court concluded that there was clear and convincing evidence of persistent conditions that prevented the children's safe return and that termination was in the children's best interest. Accordingly, the court terminated Mother's parental rights to her children.

## II. ANALYSIS

A parent has a fundamental right, grounded in both the federal and State constitutions, to the care and custody of his or her own child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174-75 (Tenn. 1996); *In re Adoption of Female Child*, 896 S.W.2d 546, 547-48 (Tenn. 1995). However, parental rights are not absolute. *In re Angela E.*, 303 S.W.3d at 250. Our Legislature has identified those situations in which the State's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth the grounds upon which termination proceedings may be brought. *See* Tenn. Code Ann. § 36-1-113(g) (2014).

Tennessee Code Annotated § 36-1-113 sets forth the grounds and procedures for terminating parental rights. *In re Kaliyah S.*, 455 S.W.3d 533, 546 (Tenn. 2015). First, parties seeking termination of parental rights must prove the existence of at least one of the statutory grounds for termination listed in Tennessee Code Annotated § 36-1-113(g). Tenn. Code Ann. § 36-1-113(c)(1) (2014). Second, they must prove that terminating parental rights is in the child's best interest. *Id.* § 36-1-113(c)(2) (2014).

Because of the constitutional dimension of the rights at stake in a termination proceeding, the parties seeking to terminate parental rights must prove both the grounds and the child's best interest by clear and convincing evidence. *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010) (citing Tenn. Code Ann. § 36-1-113(c); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 808-09 (Tenn. 2007); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002)). This heightened burden of proof serves "to minimize the possibility of erroneous decisions that result in an unwarranted termination of or interference with these rights." *In re Bernard T.*, 319 S.W.3d at 596. "Clear and convincing evidence" leaves "no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hodges v. S.C. Toof &*

*Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992). It produces a firm belief or conviction in the fact-finder's mind regarding the truth of the facts sought to be established. *In re Bernard T.*, 319 S.W.3d at 596.

## A. STANDARD OF REVIEW

On appeal, we review the trial court's findings of fact "de novo on the record, with a presumption of correctness of the findings, unless the preponderance of the evidence is otherwise." *In re Taylor B.W.*, 397 S.W.3d 105, 112 (Tenn. 2013); Tenn. R. App. P. 13(d). We then make our "own determination regarding whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, provide clear and convincing evidence that supports all the elements of the termination claim." *In re Bernard T.*, 319 S.W.3d at 596-97. We review the trial court's conclusions of law de novo with no presumption of correctness. *In re J.C.D.*, 254 S.W.3d 432, 439 (Tenn. Ct. App. 2007).

## B. DUE PROCESS

On appeal, Mother argues that her due process rights were violated because she lacked counsel during what she calls "critical stages" of the process. According to Mother, the critical stages fell between a) the date the juvenile court's order adjudicating the children dependent and neglect and awarding custody to the maternal grandparents became final and b) the date the petition for termination of parental rights was filed. Without question, in filing their petition for termination of parental rights, Mr. and Mrs. W. relied on events that either occurred or did not occur while Mother lacked the benefit of counsel.

A parent's liberty interest in the right to the care and custody of her child is protected by the Due Process Clauses of the federal and state constitutions.[2] *In re Carrington H.*, 483 S.W.3d 507, 521 (Tenn. 2016), *petition for cert. filed sub. nom. Vanessa G. v. Tenn. Dep't of Children's Servs.*, (U.S. Apr. 22, 2016) (No. 15-1317). The due process protections entitle parents to "fundamentally fair procedures" in termination proceedings. *Id.* at 522 (quoting *Santosky v. Kramer*, 455 U.S. 745, 754 (1982)). However, even in parental termination cases, appointment of counsel is not constitutionally required in every instance.[3] *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 31-32 (1981).

---

[2] Our Supreme Court has previously held that due process protections of article 1, section 8, of the Tennessee Constitution are "synonymous with the due process provisions of [the Fifth and Fourteenth Amendments to the United State Constitution]" and, like the federal constitution, "encompass[ ] both procedural and substantive protections." *Lynch v. City of Jellico,* 205 S.W.3d 384, 391 (Tenn. 2006).

[3] By statute, Tennessee provides the right to appointed counsel for indigent parents in every dependency and neglect and parental termination proceeding. Tenn. Code Ann. § 37-1-126(a)(2)(B), (a)(3) (2014).

We find Mother's due process argument unavailing. Mother's appeal is from the order of the chancery court terminating her parental rights, not from the orders of the juvenile court finding her children dependent and neglected or awarding custody to Mr. and Mrs. W. Termination proceedings and dependency and neglect proceedings are distinct and separate proceedings. *In re M.J.B.*, 140 S.W.3d 643, 651 (Tenn. Ct. App. 2004); *see also In re Carrington H.*, 483 S.W.3d at 536 (declining to address an ineffective assistance of counsel claim for a dependency and neglect proceeding in an appeal of a parental termination case). Furthermore, we have previously held that a due process violation occurring in a dependency and neglect proceeding as a result of a failure to appoint counsel may be "fully remedied by the procedural protections provided . . . at the termination hearing." *In re S.Y.*, 121 S.W.3d 358, 366 (Tenn. Ct. App. 2003). We conclude such is the case here.

## C. GROUND FOR TERMINATION OF PARENTAL RIGHTS

Although Mother only raised a due process argument regarding lack of representation during a portion of the dependency and neglect proceeding, we "review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests, regardless of whether the parent challenges these findings on appeal." *In re Carrington H.*, 483 S.W.3d at 525. In this case, the chancery court found termination of parental rights appropriate under Tennessee Code Annotated § 36-1-113(g)(3), a ground commonly referred to as "persistence of conditions." *See In re Audrey S.*, 182 S.W.3d 838, 871 (Tenn. Ct. App. 2005).

The persistence of conditions ground focuses "on the results of the parent's efforts at improvement rather than the mere fact that he or she had made them." *Id.* at 874. The goal is to avoid having a child in foster care for a time longer than reasonable for the parent to demonstrate her ability to provide a safe and caring environment for the child. *In re Arteria H.*, 326 S.W.3d 167, 178 (Tenn. Ct. App. 2010), *overruled on other grounds*, *In re Kaliyah S.*, 455 S.W.3d 533 (Tenn. 2015). The question before the court, therefore, is "the likelihood that the child can be safely returned to the custody of the [parent], not whether the child can safely remain in foster care . . . ." *In re K.A.H.*, No. M1999-02079-COA-R3-CV, 2000 WL 1006959, at *5 (Tenn. Ct. App. July 21, 2000).

To establish persistence of conditions, the child must have been removed from the home for six months and: (1) "[t]he conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent . . . still persist;" (2) "[t]here is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent . . . in the near future;" and (3) "[t]he continuation of the parent . . . and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home." Tenn. Code Ann. § 36-1-113(g)(3). Each of the statutory elements must be established by clear and convincing

evidence. *In re Valentine,* 79 S.W.3d at 549.

We conclude that there is clear and convincing evidence of the persistence of conditions ground. By the time Mr. and Mrs. W. obtained custody of the children by order of the juvenile court, the children had been removed from Mother's home for over two years. The conditions that led to the children's removal still persisted. Mother admitted that her children were removed from her home as a result of her use of "crystal meth" and that she had used methamphetamines within two months of the hearing on termination of her parental rights. Despite this, Mother claimed she did not need further drug treatment, rather she "need[ed] something to help me get established again." Mother also acknowledged having suicidal thoughts.

Mother conceded that she was not ready for the children to come back to her, and the proof showed that situation was unlikely to change in the near future. She testified that she was without a job, broke, and "staying with friends and kind of going from couch to couch . . . ." In this circumstance, continuation of Mother's parental relationship also impeded the children's integration into a permanent home. Mrs. W. testified to the W.'s desire to adopt the children. By the time of the hearing, the children had been in the physical custody of Mr. and Mrs. W. for over twenty-one months and were doing well. According to Mrs. W., the children referred to her as "Mom" and to her husband as "Daddy."

### D. BEST INTEREST OF THE CHILDREN

Having found clear and convincing evidence of one ground for termination of Mother's parental rights, we must consider whether termination is in the best interest of the children. *See* Tenn. Code Ann. § 36-1-113(c)(2). Because "[n]ot all parental misconduct is irredeemable[,] . . . Tennessee's termination of parental rights statutes recognize the possibility that terminating an unfit parent's parental rights is not always in the child's best interests." *In re Marr*, 194 S.W.3d 490, 498 (Tenn. Ct. App. 2005). Tennessee Code Annotated § 36-1-113(i)[4] lists nine factors that courts may consider in making a best interest

---

[4] The statutory factors include, but are not limited to, the following:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

7

analysis. The focus of this analysis is on what is best for the child, not what is best for the parent. *Id.* at 499. Although "[f]acts relevant to a child's best interests need only be established by a preponderance of the evidence, . . . the combined weight of the proven facts [must] amount[] to clear and convincing evidence that termination is in the child's best interests." *In re Carrington H.*, 483 S.W.3d at 535.

The chancery court found that all of the statutory best interest factors, but one, weighed in favor of termination. Although the evidence preponderates against some of the chancery court's factual findings, the combined weight of the evidence in this case amounted to clear and convincing evidence that termination was in the children's best interest. As for the first statutory factor, the evidence showed that Mother had failed to make an adjustment in her circumstance, conduct, or conditions to make it either safe or in the children's best interest to return to Mother. By her own admission, Mother was not ready for the return of her children, and Mother was living with friends, "going from couch to couch."

As for the second statutory factor, the proof showed reasonable efforts to assist Mother with making a lasting adjustment. The chancery court found that "Bethany 'went the extra mile' in extending its temporary Safe Families Program beyond its usual period to give Mother more time to achieve rehabilitation through the program at Moriah House" and that "Moriah House continued to accommodate Mother until her alcohol use disqualified her from the program." The evidence does not preponderate against either factual finding.

In considering the third statutory factor, the chancery court found that Mother failed to

---

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;
(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;
(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances, or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;
(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or
(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i).

maintain regular visitation or contact with the children.  Although Mother asserted that Mr. and Mrs. W. frustrated her efforts, the court credited Mrs. W.'s testimony that she always accommodated Mother's requests to visit or contact the children.  As we recently explained, "[w]hen the resolution of an issue in a case depends upon the truthfulness of witnesses, the trial judge, who has had the opportunity to observe the witnesses and their manner and demeanor while testifying, is in a far better position than this Court to decide those issues." *In re Navada N.*, No. M2015-01400-COA-R3-PT, 2016 WL 3090908, at *7 (Tenn. Ct. App. May 23, 2016) (citing *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997)).  Thus, we give great weight to the credibility accorded to a particular witness by the trial court. *Id.* (citing *Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997)).  We also note that Mother was unable to visit her children after the petition for termination was filed due to a failed drug test.

The chancery court found the fourth statutory factor favors termination.  Mother failed to establish a meaningful relationship with the children.  As noted by the chancery court, when DCS removed them from Mother's home, the children were almost 3 years and 16 months old.  Mrs. W. testified that, while she had custody of the children, Mother has called regularly but she visited the children only every three to four weeks.  According to Mrs. W., some visits lasted no more than thirty to forty-five minutes.  With the children being removed at such a young age and for such a long time, the evidence established a lack of a meaningful relationship.

The evidence relative to the fifth statutory factor is wanting.  The chancery court found "that a change of caretakers . . . would have a catastrophic effect on the Children's emotional, psychological and medical condition in relation to their present circumstances."  But, in making this finding, the court relied primarily on an email message from a representative of Bethany.  No representative from Bethany testified at trial, and Mr. and Mrs. W. offered scant proof relative to this factor.  The evidence does not support the chancery court's finding.

As for the sixth statutory factor, the chancery court found that Mother had neglected the children but did not find that the factor weighed strongly in favor of termination.  The court reasoned that the acts of Mother that led to the children's removal were "some four years removed from the present."

Finally, the chancery court found that the seventh and eighth statutory factors weighed strongly in favor of termination.  As found by the chancery court, "Mother, sadly, ha[d] no place of abode worthy of being referred to as a 'home.'"  In addition, Mother's mental and/or emotional status prevented her from providing safe and stable care and supervision of the children.  The proof established that, in addition to an ongoing issue with drugs, Mother had considered suicide on several occasions.

9

### III. CONCLUSION

Consistent with our past precedent, we conclude that any due process violation associated with the prior dependency and neglect proceeding involving the children was remedied by the procedural protections provided to Mother as a part of the parental termination proceeding. Having reviewed the findings as to the sole ground for termination and as to whether termination was in the children's best interests, we affirm the decision of the chancery court.

_____
W. NEAL MCBRAYER, JUDGE